**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

|  |  |
|---|---|
| PAYABILITY COMMERCIAL FACTORS, LLC<br><br>                 *Plaintiff,*<br><br>      v.<br><br>33ACROSS, INC.,<br><br>             *Defendant*. | Case No. 1:16-cv-928-LY |

### <u>33ACROSS'S MOTIONS TO DISMISS FOR:</u>

**1.** <u>**LACK OF SUBJECT MATTER JURISDICTION:**</u>

**2.** <u>**LACK OF PERSONAL JURISDICTION; AND**</u>

**3.** <u>**IMPROPER VENUE**</u>

**(Oral Argument Requested)**

Table of Contents

Page

I.    Introduction ........................................................................................................... 2

  A.    The Parties ...................................................................................................... 2

    1.    33Across ................................................................................................. 2

    2.    Payability ............................................................................................... 3

    3.    BRAV Communications, Inc. ("BRAV") .............................................. 4

  B.    The Complaint ................................................................................................ 5

II.   Facts ...................................................................................................................... 6

III.  Argument .............................................................................................................. 10

  A.    There Is No Subject Matter Jurisdiction ....................................................... 11

    1.    There Is No Diversity of Citizenship .................................................... 11

    2.    The Amount in Controversy Cannot Exceed $75,000 .......................... 13

  B.    There is No Personal Jurisdiction Over 33Across ......................................... 14

  C.    Venue is Improper .......................................................................................... 17

IV.  Conclusion ............................................................................................................ 17

Table of Authorities

Page(s)

## Cases

*Bell Helicopter Textron, Inc. v. C&C Helicopter Sales, Inc.,*
  2001 U.S. Dist. LEXIS 3724 (N.D. Tex. 2001)....................................................... 19

*Bryant v. Kinder*
  2014 U.S. Dist. LEXIS (SDNY 2014) ..................................................................... 13

*Burger King v. Rudzewicz,*
  471 U.S. 462, 474 (1985)......................................................................................... 16

*Fitzgerald v. Seaboard,*
  760 F.2d 1249 (11th Cir. 1985) ......................................................................... 11, 15

*Hanson v. Denckla,*
  357 U.S. 235 (1958)................................................................................................. 16

*Harvey v. Grey Wolf Drilling Co.,*
  542 F.3d 1077 (5th Cir. 2008) ................................................................................ 12

*Helicopteros Nacionales de Columbia, S.A. v. Hall,*
  466 U.S. 408 (1984)................................................................................................. 18

*Int'l Shoe Co. v. State of Wash., Office of Unemployment Compensation and Placement,*
  326 U.S. 310 (1945)................................................................................................. 15

*Kasal v. Encana Oil,*
  2012 U.S. Dist. LEXIS 44982 (N.D. Tex. 2012)..................................................... 13

*Kokkonen v. Guardian Life Ins. Co. of Am.,*
  511 U.S. 375 (1994)................................................................................................. 11

*Mecklenburg County v. Time Warner,*
  2010 U.S.Dist. LEXIS 6215 (W.D.N.C. 2010)....................................................... 13

*Medicare Inc. v. St. Paul Mercury Ins. Co.,*
  166 F.3d 214 (3rd Cir. 1999), overruled on other grounds 545 U.S. 546 (2005) ..... 15

*Mintech Repair v. Recovery & Dist. Services,*
  2013 U.S. Dist. LEXIS 179782 (N.D. Tex. 2013)................................................... 14

*Moran v. Kingdom of Saudi Arabia,*
  27 F.3d 169 (5th Cir. 1994) .................................................................................... 12

*Offiiong v. Holder,*
  864 F. Supp. 2d 611 (S.D. Tex. 2012) ......................................................... 12, 13, 14

*Panda Brandywine Corp. v. Potomac Electric Power Co.,*
  253 F.3d 865 (5th Cir. 2001) .................................................................................. 18

*Renoir v. Hantman's Assoc.,*
  2006 U.S. Dist. LEXIS 31647 (S.D.Tex. 2006), *affirmed* 230 Fed. Appx. 357 (5th Cir. 2007)
  (unpublished) .......................................................................................................... 17

*Saint Paul Mercury Indemnity Co. v. Red Cab Co.*,
  303 U.S. 283 (1938) ............................................................... 12, 14, 15
*Seitz v. Envirotech Systems Worldwide Inc.*,
  2007 U.S. Dist. LEXIS 44277 (S.D. Tex. 2007) ................... 18
*Stafford v. Mobil Oil Corp.*,
  945 F.2d 803 (1991) ............................................................... 11
*Strain v. Harrelson Rubber Co.*,
  742 F.2d 888 (5th Cir. 1984) ................................................. 12
*Stuart v. Spademan*,
  772 F.2d 1185 (5th Cir. 1985) ............................................... 11

**Statutes**

28 U.S.C. § 1332 ....................................................................... 17
28 U.S.C. § 1391 ....................................................................... 17
Tex. Civ. Prac. & Rem. Code § 17.042 .................................... 16

**Other Authorities**

15-102 *Moore's Federal Practice - Civil* § 12.31[4] ................ 10
  *Moore's* § 12.30[4] ............................................................... 11
  *Moore's* § 12.30[5] ............................................................... 12
  *Moore's* § 102.30 ................................................................. 11
  *Moore's* § 102.34[1] ............................................................. 11
  *Moore's* § 102.34[2] ............................................................. 11
  *Moore's* § 102.104 ............................................................... 12
Charles A. Wright, Arthur R. Miller, et al, *Federal Practice & Procedure Federal Rules Of Civil Procedure*,
  § 1350 (3d 2016) ............................................................... 11, 13

This case should never have been brought; it suffers from a multiplicity of defects, which cannot be remedied. There is neither subject matter jurisdiction in the federal court system, nor personal jurisdiction in Texas, and venue is both improper and inconvenient (the subject of an accompanying motion).

Subject matter jurisdiction fails for two reasons:

(1)     The Complaint fails to plead diversity of *citizenship*.  According to Payability Commercial Factors LLC's ("Payability") website, its only place of business is in New York City (Kansas and Texas are not mentioned); 33Across is headquartered nearby, in the same city.  The Complaint states Payability's "sole member" and "acting President" is a Colorado "resident," and identifies what appears to be a vacation retreat in Aspen, Colorado. Information on the web, however, undermines that assertion and states that he works in New York City (*infra,* pp. 3-4); and

(2)     Even if diversity existed, the amount in controversy cannot reach the $75,000 threshold, even assuming the amount Payability has demanded ($154,272.51) were used as the starting point. In all events, that amount has no factual basis and cannot be reconciled with 33Across's books.

This is a contract claim at base – where 33Across has undisputedly paid $XX,916.43[1] (and another $XX,932.20).  When the $XX,916.43 payment is deducted from the $154,273 demanded (to arrive at $XX,356) the jurisdictional threshold cannot be reached.  Additionally, neither Payability nor its assignor (BRAV Communications, Inc.) is, or was, entitled to the amount requested in the Complaint because of BRAV's fraudulent activities.  Payability simply

---

[1]     Pursuant to the Court's November 8, 2016 Order (Dkt No. 18), 33Across submits this revised motion with certain redactions. The precise amounts are confidential and can be found in the accompanying First Declaration of Raviv Shefet ¶ 25, (Dkt. 19-1), filed under seal.

ignores the fraud that reduces the amount by another 90%.  These facts are indisputable, and the claim cannot exceed the $75,000 jurisdictional requirement – to an absolute factual and legal certainty.

Moreover, 33Across has no connection to Texas; and, the underlying dispute does not relate to Texas. Therefore, personal jurisdiction does not exist in Texas, and venue is also improper.

Finally, as discussed in the accompanying alternative motion, because both companies are located in New York, the closest relevant party witness is 1700 miles away. No witness is in Texas, meaning that venue is inconvenient here.  Assuming the other defects did not exist, this case should be transferred to the Southern District of New York ("SDNY"), which is a short ride from both parties' offices.

## I.    INTRODUCTION

### A.    The Parties

#### 1.    33Across

33Across has its headquarters in New York City; it has no employees, bank accounts or property in Texas. (First Declaration of Raviv Shefet ¶ 3, Dkt. 19-1; First Declaration of David A. Loewenstein, Dkt. 16-1; Complaint, Dkt. 1, ¶ 2).  As explained below, this dispute has no relevant connection to Texas.

In simplified terms, 33Across's business is to act as a facilitator between online advertisers (e.g., Duracell), that look to place advertisements on webpages, and online publishers' owners (e.g. *The New York Daily News*).  (Dkt. 19-1, ¶ 5).  33Across uses third parties (e.g., Google) to connect the two.  (*Id.*)  33Across pays the website owners based on the

number of *delivered* advertising impressions posted on websites (i.e., the number of advertisements that were viewed by users).  (Dkt. 19-1, ¶ 5).

However, 33Across does not get paid by the advertisers for fraudulent impressions, and therefore does not pay the online publishers for fraudulent impressions. (*Id.* ¶ 7 and Dkt. 16-19, ¶ 3). Fraudulent impressions can be generated in a variety of ways including automated systems that artificially inflate the number of impressions. (Dkt. 19-1, ¶ 7).  This well-known problem is significant for advertisers.  And, they refuse to pay for these fraud-based activities. (*Id.* ¶ 7).  To regulate the process, the third parties (e.g., Google), use very sophisticated algorithms to determine if reported delivered impressions were fraudulently generated. (*Id.* ¶ 8).  The process of getting the information from third-party regarding the fraudulent activity typically takes more than 90 days. (*Id.* ¶ 9).  After 90 days, these third parties (e.g., Google) inform companies like 33Across about what is sometimes called "invalid activity."   (*Id.* ¶ 10).  33Across then deducts the fraudulent impressions from the total number of impressions to calculate the amount of money a website owner is owed. (*Id.* ¶ 11).

## 2.   __Payability__

Payability is a limited liability company ("LLC") that engages in a financing arrangement called factoring. (Dkt. 16-2, ¶ 6).  It purchases revenue streams from websites that have displayed advertisements and are owed money; it advances the money to the website at a discounted rate, so the website does not need to wait for payment.  (Dkt. 16-3; Dkt. 1, ¶ 6).

According to Payability's website, it has only one place of business, in New York City (not far from 33Across's office). (Dkt. 16-4).  The Complaint asserts that Scott Lynn ("Lynn") is "Payability's acting President and its sole member," and is a "*resident* at 930 S. Mill Street Aspen, Colorado."  (*Id*; emphasis added).  The owner of that property is listed as "Top of the

3

Mill Lot 4 LLC," not Lynn, and is located in Overland Park, Kansas (where Payability claims to be located; *see* Dkt. 16-2, ¶ 1; Dkt. Nos. 16-5 and 16-6 "EstateAspen.com" - "Price Available Upon Request").  The attached map shows the address is adjacent to an Aspen Mountain ski resort, (Dkt. 16-7).  Whatever the property's status, it does not appear to be Lynn's domicile as that term is defined (*see* below).

Payability's website's "About the Founders" page states:

"Scott Lynn is the Founder of Payability. *He started the company out of New York City* after seeing a need for faster payments by his Adknowledge customers." (*Id.* Ex. G; emphasis added).

Lynn's LinkedIn page states that "I spend time between New York City and Aspen." (Dkt. 16-9).

Because an LLC is a citizen of all jurisdictions where its members are domiciled, Lynn's *domicile* – not his purported "residen[ce]" -- controls whether there is diversity of citizenship. (*Infra,* p. 11).

Moreover, Payability's allegations (although irrelevant, because they do not allege "*citizenship*" (*see infra,* pp. 12-12)) should be viewed with skepticism.  The Aspen address is most likely a temporary winter vacation home, not Lynn's domicile.

Payability has no real connection to Texas.  According to LinkedIn, Payability has no employees in Texas, but has many in New York.  (Dkt. 16-10). Payability's Texas "connection" is tenuous at best (and irrelevant for determining either subject matter or personal jurisdiction). The address listed by the Office of the Comptroller of the State of Texas belongs to "Corporation Service Co.," presumably an agent for service of process.  (Dkt. 16-11).

**3.      BRAV Communications, Inc. ("BRAV")**

BRAV is a Canadian company based near Toronto.  (Dkt. 16-13).   It apparently ran a

website called FashionStyleMag.com ("Fashion Style").  (Dkt. 19-1, ¶ 12 and Dkt. 19-2).

In October 2015, BRAV entered into an agreement with 33Across in which BRAV would be paid for *legitimate* impressions only and would not be paid for any fraudulently generated impressions. (Dkt. 19-1, ¶¶ 13-14 and Dkt. 16-19, ¶ 3).

Payability claims it obtained the right to collect BRAV's revenue and has based this suit on an agreement between BRAV and it ("The BRAV-Payability Agreement").  However, 33Across was not a party to that agreement, and only saw it for the first time when the Complaint was filed.  (Dkt. 19-1, ¶ 16).

Raaj Kapur Brar ("Brar") is the founder and CEO of BRAV.  (Dkt. 16-14).   Brar is no stranger to fraud allegations related to generating massive numbers of fraudulent advertising impressions. In February 2014, Facebook accused Brar, of a similar attempt artificially to inflate advertising impressions, to the tune of $600,000.  (Dkt. 16-15).  A simple Google search would have revealed to Payability this questionable history, and would have created a red-flag warning that it was about to give a person with a sketchy past tens of thousands of dollars.  Apparently Payability did not bother to make this rudimentary inquiry, and gave Brar thousands of dollars based on his *ipse dixit*.  It now seeks to recoup that bad investment from the wrong party -- 33Across.

### B.   The Complaint

The Complaint alleges Breach of the BRAV-Payability Agreement, Account Stated and Unjust Enrichment. (Dkt. 16-2). There is no pleading concerning Payability's citizenship.

There is also no pleading concerning *personal* jurisdiction, only a conclusory allegation regarding subject matter jurisdiction, supposedly based on diversity, an assertion that the claim

exceeds $75,000, and conclusory allegation, based on the BRAV-Payability Agreement, concerning venue and "jurisdiction" that reads in its entirety:

> Venue is proper in this court based upon the choice of law, jurisdiction and venue provisions of a multi-party Agreement entered into by Payability and BRAV Communications, Inc.

(Dkt. 16-2; Dkt. 1, ¶ 4).

This paragraph argues that venue and "jurisdiction" are proper because Payability wrote a contract that says so.  However, 33Across was not a party to that agreement (it is not a "multi-party Agreement" in any case), and 33Across never agreed to jurisdiction (or venue) in Texas. All 33Across's business dealings concerning the underlying dispute were with BRAV in Canada, and were conducted from its New York office. (Dkt. 19-1, ¶ 14).

## II.   FACTS

In October 2015, 33Across entered into a contract with BRAV to pay BRAV for non-fraudulent impressions. (Dkt. 19-1, ¶ 13; Dkt. 19-2; Dkt. 16-19, ¶ 3).  BRAV was permitted view the number of impressions that the Fashion Style's website supposedly generated on 33Across's computer system, on a page called a "dashboard." (Dkt. 19-1, ¶ 17).   Payability claims to have relied on the dashboard to formulate its claim; we do not know the precise basis of Payability's $154,000 demand, whether it relied on the dashboard exclusively, or if it relied on BRAV's representations, or some combination.

The dashboard (*see* screenshot below) unambiguously stated that: the numbers were "*Estimated* Revenue;" "*estimates subject to change*;" and "[i]f you have any questions about this report, please call your account representative."  (Dkt. 19-1, ¶ 18; emphasis added).



That information was also password protected, and BRAV was given the right of "*personal* use" only for that data.  (Dkt. 19-1, ¶ 20 and Dkt. 16-20, Terms of Use ¶¶ 3 and 5; *see* also Privacy Policy p. 4 "Information Security").  Nevertheless, Payability apparently viewed the dashboard, without permission, relied on the "estimates," at least in part, but never called 33Across to verify the numbers.  (Dkt. 19-1, ¶ 22)  The amount demanded, in any case, does not square with 33Across's dashboard numbers.  (*Id.* ¶¶ 25 and 29 and *see* chart below).

Until this suit was filed, 33Across had no idea that Payability had infiltrated 33Across's server. (*Id.* ¶ 21)  Payability never asked for, nor did it receive permission from 33Across to view the dashboard. (*Id.* ¶ 22)  However, assuming Payability had permission to view these data, a simple phone call or email to 33Across would have informed Payability the numbers were only estimates (if Payability did not already know that) and were entirely overstated because of the fraud.

As explained above, it typically takes more than 90 days to obtain the fraud metrics and to incorporate those data into the payment calculations. (*Id.* ¶¶ 9, 11). All those in the industry understand these preliminary numbers are estimates because the fraudulent impression data cannot be incorporated instantaneously. (*Id.* ¶ 23)  Indeed, the sole purpose of Payability's

business is to advance payments *because* these payments are delayed 60 to 90 days. As

Payability's web site states:

> We heard concerns regularly from developers and publishers that their payment terms were lengthening. … The result was cash-flow gaps and erratic amounts of working capital for the developers and publishers.

> Payment terms between Net 30 and Net 90 days constrain developers' and publishers' capacity for growth, and in some cases, their ability to operate.

(Dkt. 16-3).

Payments are delayed, as Payability obviously knew, to prevent payment for fraudulent

impressions. Therefore, Payability knew from day one it could not blindly rely on the dashboard

numbers.

Over the course of the BRAV relationship, 33Across paid approximately $XXX,848.63

(*see* chart below; Dkt. 19-1, ¶ 25).  This number cannot be disputed.  (*See* wire transfer details at

Dkt. 19-5).

| Item | 1-Oct | 1-Nov | 2-Dec | 2-Jan | 2-Feb | Total |
|---|---|---|---|---|---|---|
| Estimated Earnings | $XXX.43 | $XXX,289.82 | $XX,602.30 | $XX,066.66 | $X,315.27 | $XXX,190.48 |
| Deductions due to Fraud | $0.00 | $XXX,698.74 | $XX,261.18 | $XX,597.80 | $0.00 | $XXX,557.72 |
| Actual Earnings | $XXX.43 | $XX,591.08 | $XX,341.12 | $X,468.86 | $X,315.27 | $XXX,632.76 |
| Fraudulent impressions | 98.1% | 97.0 % | 94.6% | 93.3% | 75.1% | |
| Payments | $0.00 | $XX,916.43 | $0.00 | $0.00 | $XX,932.20 | $XXX,848.63 |

The third-party fraud reports are routinely relied on in this industry (Dkt. 19-1, ¶ 26), and

cannot seriously be disputed.  As it turned out, for four months running, out of only five months

that 33Across did business with BRAV, over 93% of the impressions that Fashion style claimed

had been generated fraudulently.  (*Id*. ¶ 24).

On December 14, 2015, at 11:09AM, 33Across emailed Brar and informed him that BRAV had been "banned … for invalid activity" and suspended BRAV (Dkt. 19-3) ("[W]e had to immediately block our tags…" *see* also "[W]e blocked your inventory…" at 1:43PM).

Apparently, a few hours later that day, at 18:33 BRAV entered into a "No-Fraud Guarantee Agreement" with Brar, and at 19:59, BRAV entered into the BRAV-Payability Agreement. (*See* Dkt. 16-2; Dkt. 1-1 at 1).

On February 29, 2016, Fashion Style sent an email purporting to have severed its ties with BRAV. (Dkt. 19-4).

It is important to recognize that 33Across made the $XX,916.43 payment listed above on December 11, 2015 – *before* Payability claims it purchased the revenue stream from BRAV. (*Id.* ¶ 30 and Dkt. 19-5). The payment was made to the Bank of Montreal. (Dkt. 19-5).

On March 16 and again on March 18, 2016, five months before the Complaint was filed, in response to Payability's inquiry, 33Across told Payability that it had paid $XX,916.43 to BRAV. (Dkt. 19-6). There can be no dispute that this payment was made (*Id.*). Payability's late inquiry in March demonstrates it did not know BRAV had been paid before Payability simply gave BRAV money a few months earlier, and further shows Payability made no investigation prior to its investment with BRAV.

In May and June 2016, 33Across and Payability exchanged emails concerning the amount at issue. (Dkt. 19-7). 33Across explained because of the fraud, and the previous payments, the amount due was $X,784. Nevertheless, Payability demanded $154,273. On June 17, 33Across asked Payability to "provide the supporting documentation" for the $154,273 demand. (*Id.*). Payability never responded.

The $154,273 is wrong for at least two reasons: (1) it ignores the massive fraud; and (2) it

ignores the $XX,916.43 payment made to BRAV.  At this point it is unclear if Payability also ignored the $XX,932.20 payment made to Payability, but that would only reduce the claim even further. The $XX,932.20 payment was made, pursuant Payability's instruction, to Wells Fargo, whose address is listed as Minnesota, with a "Beneficiary Address" in Kansas. (Dkt. 19-5; Dkt. 19-6).

 Even if we were to accept the incorrect $154,272.51 number, subtracting out the $XX,916.43 payment yields: $XX,356.08 – which is below the threshold for diversity subject matter jurisdiction.  That does not take into account the blatant fraud which would reduce that number by 90% -- yielding a number far below the $75,000 threshold.

What comes through loud and clear, is that Payability failed to investigate Brar or BRAV. Nevertheless, it apparently gave Brar/BRAV tens of thousands of dollars and is now blaming 33Across for its own mistakes.  Payability bought "a pig in a poke":  to the extent Payability has a claim – it is with Brar/BRAV, not 33Across.  Indeed, the BRAV-Payability Agreement has a "Full Recourse" provision that enables Payability to recover funds from BRAV and a "No Fraud Guarantee Agreement with Brar.  (Dkt. 16-2; Dkt. 1-1, 18:33 Agreement and Terms and Conditions, ¶ 3.8). It should exercise those rights and not harass 33Across.

When the day is done, the amount due, net of the fraud and prior payments, which 33Across has offered to pay, is only $X,784.13.  (Dkt. 19-7).

### III.  ARGUMENT

It is hornbook law that an assignee cannot obtain greater rights than the assignor had.  E. Allan Farnsworth, *Farnsworth On Contracts* (2e) § 11.8 (2001) ("Every law student knows that 'the assignee stands in the shoes of the assignor.'")  Payability ignores that inconvenient reality and comes up with a number that is far more than BRAV was owed.

There are several fundamental threshold procedural flaws in this cause of action that highlight the substantive defects.  This case was brought in a distant jurisdiction, which only increases litigation costs, and is being used as leverage to try to extract a payment where none is due.

Because federal courts are courts of limited jurisdiction, there is a presumption that jurisdiction does not exist. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (jurisdiction lacking); *Fitzgerald v. Seaboard*, 760 F.2d 1249, 1251 (11th Cir 1985). It is incumbent on plaintiffs first to allege, then when challenged, to prove personal and subject matter jurisdiction exists. *Stafford v. Mobil Oil Corp.,* 945 F.2d 803, 804 (1991); 15-102 *Moore's Federal Practice - Civil* § 12.31[4] (2016) ("*Moore's*"); *Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir. 1985).

### A.      There Is No Subject Matter Jurisdiction

"The intent of Congress drastically to restrict federal jurisdiction in controversies between citizens of different states has always been rigorously enforced by the courts." *Saint Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. 283, 288 (1938). Subject matter jurisdiction is a threshold issue, like personal jurisdiction, that the court must address before it moves on to other issues. *Moran v. Kingdom of Saudi Arabia*, 27 F.3d 169, 172 (5th Cir. 1994); *Offiiong v. Holder*, 864 F. Supp. 2d 611, 615 (S.D. Tex. 2012).

### 1.      There Is No Diversity of Citizenship

The citizenship of an LLC is the citizenship of all its members. *Harvey v. Grey Wolf Drilling Co.*, 542 F.3d 1077, 1080 (5th Cir. 2008); *Kasal* at *2.  Plaintiff has not provided this information, but based on the evidence provided Payability's member is a New York citizen, like 33Across, destroying diversity.

11

There are two types of attacks on a Complaint for lack of subject matter jurisdiction, facial and factual. *Offiiong* at 615-16; *Moore's* § 12.30[4]. This motion is both.

"A complaint that alleges merely residency, rather than citizenship, is insufficient to plead diverse citizenship." *Moore's* § 102.30 citing *Strain v. Harrelson Rubber Co.,* 742 F.2d 888, 889 (5th Cir. 1984) and other decisions; *Kasal v. Encana Oil*, 2012 U.S. Dist. LEXIS 44982 (N.D. Tex. 2012). This Complaint, therefore, is facially defective because it does not allege diversity of *citizenship.*

Citizenship means domicile. *Moore's* § 102.34[1]. Domicile, in turn, means a sense of permanence: (1) presence in the State and (2) intent to remain. *See* generally *id.* § 102.34[2].

The Complaint is also factually defective because the evidence shows Lynn lives and works in New York. His Aspen ski chalet is not his domicile. *Mecklenburg County v. Time Warner*, 2010 U.S. Dist. LEXIS 6215 at *16 (W.D.N.C. 2010) (location of vacation home is not dispositive of citizenship); *see* also *Bryant v. Kinder* 2014 U.S. Dist. LEXIS at *7-8 n.1 (S.D.N.Y. 2014) (vacation home does not change domicile).

Unlike Rule 12(b)(6) motions, when a factual attack is made, "no presumption of truthfulness attaches to the plaintiffs' jurisdictional allegations…" *Offiiong* at 616; *Moore's* § 12.30 [4]. The proofs must be made. Charles A. Wright, Arthur R. Miller, et al, *Federal Practice & Procedure Federal Rules Of Civil Procedure*, § 1350 (3d 2016) ("However, once a factual attack is made on the federal court's subject matter jurisdiction, the district judge is not obliged to accept the plaintiff's allegations as true and may examine the evidence to the contrary and reach his or her own conclusion on the matter." Footnote omitted, citing cases, including *Offiiong* at 615-16.

The burden is squarely on Payability to *prove* that jurisdiction exists with a complete set of *facts*, *Offiong* at 616; *Moore's* § 12.30[5], which it cannot do.

### 2.        The Amount in Controversy Cannot Exceed $75,000

In *Saint Paul* at 289, the Supreme Court held (emphasis added):

[I]f, from the proofs, the court is satisfied to a like certainty that the plaintiff never was entitled to recover that amount, and that his claim was therefore colorable for the purpose of conferring jurisdiction, the suit will be dismissed.

Even if were assume that diversity of citizenship exists, Payability's claim is not even "colorable."  It was never entitled to $154,000, or any amount over $75,000.  If the amount alleged in the Complaint is impossible to achieve, the Court must dismiss the case for lack of subject matter jurisdiction. *Mintech Repair v. Recovery & Dist. Services*, 2013 U.S. Dist. LEXIS 179782 (N.D. Tex. 2013).

The proof is unequivocal:  Payability cannot collect anything close to $75,000. The contrary pleading cannot be factually or legally supported, and was not made in good faith.

This is not a defense to the suit. Rather, it is a factual attack on the faulty underlying premise of the litigation. The distinction is that nothing has changed after the Complaint was filed; Payability **never** was entitled to anything close to $75,000 and has no factual support for its claim. *Mintech* at *10 (subjective belief does not control; there must be proof to support the assertion that claimed amount was due before the complaint was filed); *Moore's* § 102.104 at 322 ("[I]f the underlying facts remain the same and it is subsequently determined that the jurisdictional minimum was not met even at the time the complaint was filed, there is no diversity jurisdiction."); *see* also *Medicare Inc. v. St. Paul Mercury Ins. Co.,* 166 F.3d 214, 217-217 (3d. Cir. 1999), overruled on other grounds 545 U.S. 546 (2005) (If the plaintiff was never entitled to recover the claimed amount, jurisdiction does not exist); *see* also *St. Paul* at 289.

To the extent Payability relies on the venue and "jurisdiction" provision in the BRAV-Payability Agreement, that assertion must fail. 33Across was not a party to the Agreement and never consented to be sued in Texas. 33Across cannot be subject to a forum selection clause that it never agreed to.

Moreover, a party cannot create subject matter jurisdiction. *Fitzgerald* at 1251; Wright & Miller § 1350 ("Since an objection to subject matter jurisdiction goes to the power of the court to hear and decide the case, it is a cardinal rule upheld by countless federal cases that the parties may not create or destroy jurisdiction by agreement or by consent.").

**B.       There is No Personal Jurisdiction Over 33Across**

The well-known touchstone of a personal jurisdiction inquiry is that the defendant must *purposefully* establish "minimum contacts" with the forum. *Int'l Shoe Co. v. State of Wash., Office of Unemployment Compensation and Placement*, 326 U.S. 310, 316 (1945). The due process inquiry is whether the defendant "purposefully established 'minimum contacts' in the forum state." *Burger King v. Rudzewicz*, 471 U.S. 462, 474 (1985) (quoting *Int'l Shoe*, 326 U.S. at 316). Consequently, "it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958).

"This purposeful availment requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts, or of the unilateral activity of another party or person." *Burger King*, 471 U.S. at 475 (internal quotations and citations omitted). "'The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State.'" *Burger King* at 474-75.

14

There is no evidence whatsoever that 33Across has the necessary minimum contacts with Texas (or really any relevant contacts) to enable the Court to hear the case without reaching well beyond the due process clause's limitations.  Indeed, the Complaint never makes an allegation about personal jurisdiction – because it cannot be made.

To summarize: 33Across had an agreement with a Canadian company to pay that company based on *legitimate* adverting impressions.  The advertisers that placed ads on Fashion Style's website were not located in Texas.  (Dkt. 19-1, ¶ 34).  Payments made to BRAV were made to a Canadian bank.  (Dkt. 19-5; Dkt 19-6). The cause of action, therefore, revolves around dispute between 33Across, a New York based company and BRAV, based in Canada. (Dkt. 19-1, ¶ 14).

33Across exchanged some emails before the lawsuit with Payability employees who have stated they worked in New York, (*see* LinkedIn pages at Dkt. 16-10) and made one wire payment ($XX,932.20) to a bank that Payability identified, Wells Fargo, based in Minnesota with a "Beneficiary Address" in Kansas.  (Dkt. 19-6 (1:58PM email) and Dkt. 19-7).  33Across has made no payments to anyone in Texas related to BRAV or Fashion style.  (Dkt. 19-1, ¶ 35). Even assuming *arguendo* that payment had been made to a person in Texas – that alone does not demonstrate *purposeful* availment sufficient to create jurisdiction; stronger connections with the forum, like communicating with a Texas resident to create the contract, plaintiff's performance in Texas (which never happened here), or a forum selection clause in the operative agreement – all fail to establish sufficient jurisdictional contacts on their own (or cumulatively) over non-resident defendants.  *Renoir v. Hantman's Assoc.*, 2006 U.S. Dist. LEXIS 31647 at * 18-24 (S.D.Tex. 2006) *affirmed* 230 Fed. Appx. 357 (5th Cir. 2007) (unpublished).

To the extent Payability tries to manufacture personal jurisdiction, or venue, here, no extensive list of citations is required to show that this claim is specious. As a matter of common sense, Payability cannot create jurisdiction with the stroke of a pen on a contract to which 33Across was not a party.  33Across never agreed to jurisdiction here and no fact supports the court's exercise of personal jurisdiction over 33Across.

There cannot be specific jurisdiction on these facts.

There is also no allegation of general jurisdiction, but even if that allegation were made, it would fail.  33Across obviously does not have "'continuous and systematic' contacts" with Texas.  *Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408 414-417 (1984); *see also, e.g., Seitz v. Envirotech Systems Worldwide Inc.*, 2007 U.S. Dist. LEXIS 44277 at *7-8 (S.D. Tex. 2007) (dismissing for lack of personal jurisdiction).

Although Payability has not alleged it, for completeness, 33Across addresses briefly the provisions of the Texas Long-Arm Statute (Tex. Civ. Prac. & Rem. Code § 17.042).

33Across has not contracted with Payability or with any other Texas resident that has any connection to this dispute; it has not committed a tort in this State and it has not recruited Texas residents for employment.  (Dkt. 19-1, ¶ 36).  Moreover, the long-arm statute extends only to the limits of the due process clause.  *Panda Brandywine Corp. v. Potomac Electric Power Co.*, 253 F.3d 865, 868 (5th Cir. 2001).  Exercising personal jurisdiction here would greatly exceed those limitations.

BRAV, a party to the BRAV-Payability Agreement, may be subject to suit in Texas, because it agreed to be sued here (and is diverse), but 33Across is not.  Any other rule would eviscerate the requirements of subject matter and personal jurisdiction and venue, and make a party subject to suit in any State that some unknown third-party selected.

**C.**    **Venue is Improper**

Venue is improper under 28 U.S.C. § 1332 (a) (which Payability relies on) because there

is no diversity jurisdiction.  For completeness, venue also is improper under 28 U.S.C. § 1391

because: (1) there is no personal jurisdiction, (2) no events took place in Texas, and (3) the case

could have been brought in New York (State Court) and perhaps elsewhere.  *Bell Helicopter*

*Textron, Inc. v. C&C Helicopter Sales, Inc.,* 2001 U.S. Dist. LEXIS 3724 at * 13 (N.D. Tex.

2001).

## IV.  CONCLUSION

For the foregoing reasons, this case must be dismissed.

Respectfully Submitted,

Dated:  November 10, 2016.

By: /s/ John M. Shumaker
John M. Shumaker (TXSB #24033069)
11501 Alterra Parkway, Ste. 450
Austin, TX 78758
P: (512) 605-0260
F: (512) 605-0269
jshumaker@leehayes.com

Of Counsel
David A. Loewenstein (*pro hac vice* pending)
PEARL COHEN ZEDEK LATZER BARATZ
1500 Broadway
New York, NY 10036
646-878-0800
DLoewenstein@PearlCohen.com

*Counsel for Defendant 33Across Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 10th day of November 2016, I caused to be electronically filed the foregoing Motions to Dismiss with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

Kelsey A. Copeland
Shook, Hardy & Bacon LLP
600 Travis St., Suite 3400
Houston, TX 77002
kcopeland@shb.com


Richard F. Shearer
Shook, Hardy &Bacon LLP
2555 Grand Blvd.
Kansas City, MO 64108-2613
rshearer@shb.com

/s/John M. Shumaker
John M. Shumaker (TXSB #24033069)
11501 Alterra Parkway, Ste. 450
Austin, TX 78758
P: (512) 605-0260
F: (512) 605-0269
jshumaker@leehayes.com
